Document Number Case Number
002          07-C-0248-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
05/02/2007 02:40:18 PM CDT

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| PENNY J. ROBERTS and DONALD GILBERT IVERSON, on behalf of themselves and all others similarly situated, | Case No. _____ |
| Plaintiffs, | |
| v. | |
| MENU FOODS INCOME FUND, MENU FOODS, INC., a New Jersey corporation, MENU FOODS HOLDINGS, INC., MENU FOODS MIDWEST CORPORATION, a Delaware corporation, CHEMNUTRA INC., a Delaware corporation, and CHEMNUTRA LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Penny J. Roberts and Donald Gilbert Iverson, individually and on behalf of all others similarly situated, allege by and through their attorneys, upon information and belief, as follows:

## NATURE OF CASE

1.      Plaintiffs bring this class action on behalf of themselves and a class of consumers and entities who purchased brands of "cuts and gravy style" dog and cat food manufactured by Menu Foods Income Fund, Menu Foods Holdings, Inc. and Menu Foods, Inc., and Menu Foods Midwest Corporation, and supplied by ChemNutra, Inc. and ChemNutra, LLC, ("Defendants' Pet Food Products") that caused pets to suffer severe illness or death. Pet owners, believing Defendants' Pet Food Products to be safe for pet consumption, incurred substantial expenses relating to the purchase of the pet food and to the veterinary monitoring and treatment that became necessary after their pets consumed Defendants' Pet Food Products. These expenses

-1-

Dockets.Justia.com

were even more extreme for those pet owners whose pets became terminally ill after consuming

Defendants' Pet Food Products. Such costs arose and were exacerbated by the undue amount of

time taken by Defendants to announce the dangers associated with its dog and cat foods.

Although Defendants knew that pet illnesses and deaths could be related to their Pet Food

Products, Defendants waited for nearly a month before telling the public and the Food and Drug

Administration (FDA) that it was recalling its products. Defendants' lethal Pet Food Products,

and the companies' excessive delay in warning consumers and regulatory agencies as to its

dangers, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

1.     The Court has original jurisdiction over this class action pursuant to 28 U.S.C.
§1332(d)(2).

2.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because

Plaintiff Penny J. Roberts resides in this judicial district. Venue is also proper pursuant to 28

U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim

occurred in this judicial district.

3.     The members of the putative Class have suffered aggregate damages exceeding

$5,000,000, exclusive of interest and costs.

## PARTIES

4.     Plaintiff Penny J. Roberts is a resident of Vernon County, Wisconsin.

5.     Plaintiff Donald Gilbert Iverson is a resident of Kenosha County, Wisconsin.

6.     Defendant Menu Foods Income Fund is a Canadian company with its principal

executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7.     Defendant Menu Foods Holdings, Inc. is a Delaware corporation and may be

served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware.

8.    Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. Menu Foods, Inc. is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

9.    Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

10.    Defendant ChemNutra Inc. is a Delaware corporation that maintains its principal place of business in Las Vegas, Nevada.

11.    Defendant ChemNutra LLC is a Chinese company with its principal executive offices located at Hangzhou, hz, Zhejiang, China 310030.

12.    Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., Menu Foods Midwest Corporation, ChemNutra Inc., and ChemNutra LLC are collectively referenced as "Defendants."

13.    At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendants.

## FACTUAL ALLEGATIONS

14.    Defendants manufacture and sell pet food internationally and are the biggest suppliers of pet food in North America.

15.    Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

16.    Defendants sell their brands internationally and in some of the largest major retail chains in the United States, such as Wal-Mart, Safeway, Kroger, PetSmart and Meijer.

17.    On March 16, 2007, Defendants, in conjunction with the Food and Drug Administration (FDA), announced a massive immediate recall of approximately 60 million containers of "cuts and gravy" pet food (pet food consisting of pieces of meat in gravy) throughout the United States based on widespread reports of pet illness and death, mostly related to kidney failure. The recall covers all "cuts and gravy" wet pet food produced and distributed by Defendants, including over ninety different brands of dog and cat food. Some of the brands recalled include Iams, Eukanuba, Best Choice, Paws, Special Kitty, and Nutro Max. Defendants' recall is the largest pet food recall in United States history.

18.    However, Defendants waited an excessive period of time before deciding to recall its harmful and lethal products. Defendants first started receiving complaints of pet illnesses and deaths as early as late-February, almost a full month before deciding to recall its products. *See, e.g.*, CBSNews.com, *Pet Food Co. Knew of Problem Last Month*, March 20, 2007, *at* http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last viewed March 22, 2007). Rather than announcing its products could be harmful to pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct its own testing. Defendants

-4-

conducted tests involving over 50 animals to observe reactions to its pet foods. Approximately one in six of the animals tested died. Yet, Defendants again waited until as many as seven test subjects died after eating its pet food before finally submitting its findings to the FDA and deciding that a recall and announcement to the public would be necessary.

19.    Due in no small part to this unnecessary and protracted delay, as of March 21, 2007 there have been at least seventy-two reported pet deaths from kidney failure nationwide and additional deaths continue to be reported by the hour. One source indicated that 1,715 dogs and cats were either sick or dead as a result of the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed March 22, 2007).

20.    Pet owners purchased Defendants' products believing them to be safe for pet consumption and beneficial to their pets. However, the "cuts and gravy" style pet food that pet owners across the nation have fed their pets has proved to be toxic, causing renal failure in cats and dogs as well as physical disorders such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

21.    Pet owners have incurred substantial expenses relating both to the purchase of Defendants' pet food and from the medical costs associated with monitoring and treating pets who have consumed, or were thought to have consumed, Defendants' contaminated food products. Indeed, several pet owners have accrued veterinary bills that have climbed into the several thousands of dollars. Furthermore, for those pet owners whose pets became terminally ill, they were forced to incur additional costs relating to their pets death, such as euthanizing and, for some, burying or cremating their pet.

22.    In addition, pet owners who have become increasingly concerned about their pet's health after learning of the recall have received little to no relief from Defendants. Defendants

-5-

have failed to manage the high volume of incoming complaints. Since instituting the recall, pet owners have been largely unable to reach Defendants' customer service representatives, often encountering busy signals or voicemail messages. *See, e.g.*, Thejournalnews.com, *Pet Owners Growling over Food Recall*, March 20, 2007, *at*

http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS01/70320034 5/1066 (last viewed March 22, 2007). To be sure, Defendants have been criticized for not being cooperative with customers, for not getting helpful information out to the public sooner and for failing to "get control of the crisis . . . employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available at* http://www.nj.com/starledger/stories/index.ssf?/base/business-6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

23.    Since the recall, Defendants have received scores of complaints and questions from consumers who have purchased its contaminated pet food products and from those whose pets have become ill or died after consuming those products.

24.    The complaints found throughout the Internet and in many of the news stories mentioned above each contain the same common theme of consumers who unwittingly purchased Defendants' food products and who were forced to take their pets to veterinarians for medical treatment after their pets became extremely, and sometimes terminally ill.

25.    Plaintiff Penny J. Roberts purchased and fed *Special Kitty* brand wet pet food in assorted flavors to her Shorthair Tabby cat, Twinks. *Special Kitty* is a brand of cat food recalled by Defendants.

26.    After eating the cat food, Twinks became noticeably ill. Ms. Roberts took Twinks to the veterinarian for diagnosis and treatment, where it was discovered that Twinks was

-6-

suffering from kidney problems.

27.    The veterinarian began treating Twinks on February 10, 2007 at a cost in excess of $900.00.

28.    Plaintiff Donald Gilbert Iverson purchased and fed *Special Kitty* brand wet pet food in assorted flavors to his purebred Bombay cat, Boo. *Special Kitty* is a brand of cat food recalled by Defendants.

29.    After eating the cat food, Boo became noticeably ill. Mr. Iverson took Boo to a veterinarian for diagnosis and treatment, where it was discovered that Boo was suffering from kidney failure.

30.    Despite the veterinarian's best efforts during treatment, on or about March 14, 2007, Boo was euthanized as a result of his kidney failure.

31.    Boo's diagnosis, treatment, and euthanization cost Mr. Iverson over $350.00.

## CLASS ACTION ALLEGATIONS

32.    Plaintiffs brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of himself and all others similarly situated as members of the following class (the "Class"): All persons and entities that purchased recalled dog or cat food exported, imported, manufactured, distributed, marketed and/or sold by Defendants.

33.    Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other

persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

34.    **Numerosity**.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed class contains tens of thousands of members.  The precise number of Class members is unknown to Plaintiffs.  The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

35.    **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b.    Whether Defendants failed to properly test their pet food before market entry of such food;

    c.    Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of their pet food;

    d.    Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

    e.    Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein; and

-8-

f.  Whether Plaintiffs and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages.

36.  **Typicality**.  Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

37.  **Adequacy of Representation**.  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intends to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

38.  **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants.  It would thus be virtually impossible for Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

39.  In the alternative, the Class may be certified because:

-9-

a.   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

b.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.   Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

40.   Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

41.   Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiffs and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiffs and the Class and that such monies can be restored to Plaintiffs and the Class. Such monies are the property of the Plaintiffs and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiffs and the Class have an ownership interest. Plaintiffs and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF

### [Negligence]

42.     Plaintiffs assert this claim against each and every Defendant on behalf of himself and the Class.

43.     Defendants owed a duty to Plaintiffs and the Class to provide pet food safe and suitable for pet consumption.

44.     Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiffs and the Class.

45.     Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiffs and the Class and for consumption by their pets.

46.     Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

47.     The losses and damages described herein were foreseeable and avoidable.

48.     Defendants' negligence proximately caused the losses and damages to Plaintiffs and the Class.

## SECOND CLAIM FOR RELIEF
### [For Unjust Enrichment]

49.     Plaintiffs hereby reallege and incorporate by reference all paragraphs previously alleged herein.  Plaintiffs assert this claim against each and every Defendant on behalf of himself and the Class.

50.     Defendants have received, and continue to receive, a benefit at the expense of Plaintiffs and members of the Class.  Defendants have knowledge of this benefit.

51.    Defendants have charged and collected from consumers, including Plaintiffs and members of the Class, money for dog and cat food that endangers the lives of their pets. Defendants thus have received benefits that they have unjustly retained at the expense of Plaintiffs and members of the Class.

52.    As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiffs and members of the Class were deprived of the use of their monies that was unlawfully charged and collected by Defendants, and are therefore entitled to restoration of their monies.

## THIRD CLAIM FOR RELIEF
### [Breach Of Express Warranty]

53.    Plaintiffs hereby reallege and incorporate by reference all paragraphs previously alleged herein. Plaintiffs assert this claim against each and every Defendant on behalf of himself and the Class.

54.    Defendants expressly warranted that their pet food was suitable and safe for pet consumption.

55.    Defendants also expressly warranted that "it manufacturer[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality."

56.    Plaintiffs and the Class were induced by Defendants' marketing, advertising, promotion, and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

57.    Plaintiffs and the Class were damaged as a proximate result of Defendants' breach of their express warranty.

-12-

## FOURTH CLAIM FOR RELIEF
### [Breach Of Implied Warranty]

58.     Plaintiffs hereby reallege and incorporate by reference all paragraphs previously alleged herein.  Plaintiffs assert this claim against each and every Defendant on behalf of himself and the Class.

59.     Defendants are merchants under section 2-104 and 2-314 of the Uniform Commercial Code.

60.     Through their marketing, advertising, promotion and labeling of their pet food, Defendants impliedly warranted that such pet food was fit for the ordinary purpose for which it was intended, including to safely nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform Commercial Code.

61.     Through their marketing, advertising, promotion and labeling, Defendants knew that Plaintiffs and the Class would purchase their pet food for the ordinary purpose of providing nourishment to their pets.

62.     Defendants manufactured, distributed, marketed, advertised, promoted, and sole their pet food for the ordinary purpose for which it was purchased by Plaintiffs and the Class.

63.     Plaintiffs and the Class relied upon Defendants' representations and warranties, and purchased and used Defendants' pet food for the ordinary purpose for which it was sold.

64.     Defendants' pet food purchased by Plaintiffs and the Class were unfit for their ordinary purpose when sold.  Such food was sold while presenting a risk of risk of illness or death to pets.  Defendants have accordingly breached the implied warranty of merchantability by selling such unfit pet food.

65.     Plaintiffs and the Class were damaged as a proximate result of Defendants' breach of warranty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

1. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and his counsel of record to represent the Class;

2. For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3. For compensatory damages sustained by Plaintiffs and all others similarly situated as a result of Defendants' unlawful acts and conduct;

4. For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

5. For pre-judgment and post-judgment interest;

6. For reasonable attorneys' fees and costs of suit, including expert witness fees; and

7. For such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

To the full extent available, Plaintiffs demand a trial by jury.


Dated: May 2, 2007


By: _____

**JOHNS, FLAHERTY & COLLINS, S.C.**
Michael L. Stoker, WI SBN 1016967
Brian G. Weber, WI SBN 1024963
Cheryl M. Gill, WI SBN 1029503
205 5th Avenue South, Suite 600
P.O. Box 1626
La Crosse, WI 54601-1626
(608) 784-5678

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Daniel C. Hedlund
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
(612) 333-8844

*Attorneys for Plaintiffs and the Class*

-15-